**160**

**Ex parte VASQUEZ.**

**No. 7068.**

United States District Court
N. D. California, N. D.
June 21, 1954.

Walter C. Frame, Sacramento, Cal., for petitioner.

Milton T. Simmons, Acting Dist. Counsel, Immigration and Naturalization Service, San Francisco, Cal., for respondent.

OLIVER J. CARTER, District Judge.

Petitioner is in the custody of the Immigration and Naturalization Service, which seeks to deport him. This Court issued a writ of habeas corpus which was returned May 17, 1954. At that time the petitioner was present represented by counsel. The Immigration and Naturalization Service was represented by counsel. After hearing and the filing of written briefs, the case was submitted.

Petitioner was convicted upon his plea of guilty of smuggling aliens into the country from Mexico. He was given a suspended sentence of ten months, ordered to pay a fine of $500, and placed on probation for five years on July 18, 1952 by the United States District Court for the Southern District of California, Southern Division.

It is the contention of the petitioner that he is under the exclusive jurisdiction of the District Court, subject to its orders, and that the Executive branch of government acting through the Immigration and Naturalization Service cannot interfere with this judicial function.

Respondent urges that it is their duty to deport petitioner under 8 U.S.C.A. § 1252(h), which provides:

"An alien sentenced to imprisonment shall not be deported until such imprisonment has been terminated by the release of the alien from confinement. Parole, probation, or possibility of rearrest or further confinement in respect of the same offense shall not be a ground for deferral of deportation."

Petitioner's answer to this statute is that since it did not become law until December 24, 1952, over five months after petitioner was placed on probation, that it would be unconstitutional as ap-

plied to him as *ex post facto* legislation. He further asserts that the law is unconstitutional insofar as it purports to interfere with the judicial power.

Research discloses one case which tends to support petitioner's position. In the case of Grant v. Guernsey, 10 Cir., 63 F.2d 163, the petitioner was placed on probation by a United States District Court. He was subsequently held to answer by a State Court on a charge growing out of the same transaction upon which he was convicted in the Federal Court. The Court of Appeals affirmed the order of the District Court discharging petitioner from State custody on the grounds that while on probation, petitioner was in the technical custody of the Federal Court, and that the assertion of jurisdiction by the State Court was a violation of comity.

The Second Circuit, in United States ex rel. Pasela v. Fenno, 167 F.2d 593, declined to follow the Guernsey case, supra. There, Pasela was convicted and put on probation by the United States District Court in Connecticut for theft of government property on a Naval Base. Pasela, a naval reservist, while on probation was recalled to active duty and court-martialed for conduct relating to the same theft for which he was convicted by the Federal Court. This case presents the same situation as is presented to the Court in the instant case. The Executive branch of government asserting jurisdiction over a person while he is subject to the jurisdiction of the Judicial branch of government. In the Pasela case, the Court said, 167 F.2d at pages 595–596:

"It may be that, where the second court obtains custody of a probationer, in the absence of the express consent of the first court, it does so wrongfully. This we need not decide. It is sufficient to say that, whether or not custody is rightly obtained, it gives the second court jurisdiction of the person. * * * The second court, having jurisdiction, then, may proceed unless there is objection on behalf of the first court; only where there is, need the second court, as a matter of comity, decline to exercise its jurisdiction."

In Lu Woy Hung v. Haff, 9 Cir., 78 F.2d 836, the Court had the problem of whether a person on parole from a California sentence, and therefore under the jurisdiction of the State, could be deported. Admitting there was the problem of comity between the Federal government and the State of California involved the Court held that since California was not objecting to the assertion of jurisdiction by the Federal government, the fact of parole presented no obstacle to deportation.

In each of the cases that have considered the problem, whether it be the problem of comity between State and Federal governments, or comity between branches of the Federal government, the courts look to see whether the body first asserting jurisdiction objects to another court or branch of government interfering therewith. And so the problem here is whether the United States Courts, having jurisdiction through probation, object to the interference with that jurisdiction by the Immigration and Naturalization Service seeking to deport the petitioner.

I am of the opinion that 8 U.S. C.A. § 1252(h), supra, takes away the power of the courts to object to deportation under these circumstances. Congress has expressly said that probation shall not be a ground for deferral of deportation. This brings us to petitioner's assertion that Congress cannot constitutionally interfere with probation, a judicial function.

In Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129, the Court considered generally the constitutional powers of the judiciary and the legislative in this field. This case arose in 1916 before there was any Federal probation law. The question was whether or not a United States District Court could indefinitely suspend the execution of a prison sentence. In holding that

it could not, the Court said, 242 U.S. at pages 41–42, 37 S.Ct. at page 74:

"Indisputably under our constitutional system the right to try offenses against the criminal laws, and, upon conviction, to impose the punishment provided by law, is judicial, and it is equally to be conceded that, in exerting the powers vested in them on such subject, courts inherently possess ample right to exercise reasonable, that is, judicial, discretion to enable them to wisely exert their authority. * * * And the effect of the proposition urged upon the distribution of powers made by the Constitution will become apparent when it is observed that indisputable also is it that the authority to define and fix the punishment for crime is legislative, and includes the right in advance to bring within judicial discretion for the purpose of executing the statute elements of consideration which would be otherwise beyond the scope of judicial authority, * * *."

The Court further said, 242 U.S. at page 52, 37 S.Ct. at page 78:

"* * * and, so far as the future is concerned, that is, the causing of the imposition of penalties as fixed to be subject, by probation legislation * * * recourse must be had to Congress, whose legislative power on the subject is, in the very nature of things, adequately complete."

■ As this case points out, probation, while a judicial function, is subject to the power of Congress to delineate the boundaries of that function. Congress has said that a defendant convicted of an offense punishable by death or life imprisonment may not be placed on probation, Rule 32(e) of the Rules of Criminal Procedure, 18 U.S.C.A. Likewise, second or subsequent offenders of the narcotics laws may not be placed on probation, 26 U.S.C.A. § 2557(b)(1).

It follows that Congress could prescribe that aliens subject to deportation could not be placed on probation, but must be turned over to the Attorney General for deportation. Therefore I conclude that it is within the power of Congress to provide that the Court's jurisdiction through probation is limited by the power of the executive branch to deport. This, I take to be the effect of 8 U.S.C.A. § 1252(h).

■ This brings us to the objection that the application of 8 U.S.C.A. § 1252(h) to the petitioner is unconstitutional because it is an *ex post facto* law, under these circumstances. The same objection was made in the case of United States ex rel. Feuer v. Day, 2 Cir., 42 F.2d 127, where the statute which was replaced by 8 U.S.C.A. § 1252(h) was applied to an alien who was convicted before it was enacted. That statute, 8 U.S.C.A. § 180b, provided in part:

"* * * imprisonment shall be considered as terminated upon the release of the alien from confinement, whether or not he is subject to rearrest or further confinement in respect to the same offense."

There, the government was successful in deporting Feuer under that section where Feuer was on parole from a sentence imposed by the State of New York. As to the objection there made that the application of the law to Feuer was *ex post facto* and unconstitutional, the Court held that the prohibition of *ex post facto* laws had no applicability to deportation of aliens, citing Bugajewitz v. Adams, 228 U.S. 585, 33 S.Ct. 607, 57 L.Ed. 978.

See also Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 743, where the Court said:

"And whatever might have been said at an earlier date for applying the *ex post facto* Clause, it has been the unbroken rule of this Court that it has no application to deportation."

I, therefore, conclude under the authorities cited that 8 U.S.C.A. § 1252(h) is neither an unconstitutional infringe-

ment upon the Judicial branch of government, nor is its application to the petitioner here unconstitutional as an *ex post facto* law.

It is ordered that the writ of habeas corpus heretofore issued be, and the same is hereby discharged, and that the petitioner be, and hereby is remanded to the custody of the Immigration and Naturalization Service.